USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/11/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JONATHAN GROENOW,

                    Plaintiff,

                -against-

DEPUTY WARDEN OF OBCC WILLIAMS,

                    Defendant.

---

13 Civ. 3961 (PAC) (JLC)

**REPORT AND**
**RECOMMENDATION**

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Paul A. Crotty, United States District Judge:**

Plaintiff Jonathan Groenow, currently incarcerated at Downstate Correctional Facility, brings this *pro se* action under 42 U.S.C. § 1983, alleging that Defendant Williams, a deputy warden at the Otis Bantum Correctional Facility ("OBCC"), violated his constitutional rights by forcing him to use a monitored telephone line to call his attorney. Williams has moved to dismiss Groenow's claims, arguing that Groenow failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e, and alternatively, for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, I recommend that the Court decline to dismiss Williams' motion on exhaustion grounds but grant his motion for failure to state a claim.

## I.    BACKGROUND

### A. Groenow's Complaint

Groenow brought suit by using the Court's form complaint for *pro se* litigants raising civil rights claims under 42 U.S.C. § 1983. *See* Complaint, dated June 8, 2013 ("Compl.") (Dkt. No. 2). Groenow alleges that while he was incarcerated at OBCC, beginning on May 25, 2012,

USDC SDNY
DATE SCANNED 3/11/14

he was "forc[ed] to call [his] attorney on a recording and monitoring system," violating his right to "confidential legal calls." Compl. at 2, 3. Groenow did not complete the section of the form complaint that inquired about the injuries he suffered as a result of this violation. In the section entitled "Exhaustion of Administrative Remedies," Groenow checked "yes," specifying that he filed a grievance with OBCC about "the violation of [his] legal calls." *Id.* at 3, 4. In response to a question asking for the outcome of his pursuit of administrative remedies, Groenow wrote in "no result." *Id.* He also provided no response as to what steps, if any, he had taken to appeal unfavorable outcomes in the administrative process. *Id.* Groenow requests that the Court "compensate [him] with as much money as possible" for this alleged violation. *Id.* at 5.

## B. Procedural History

Groenow filed his complaint on June 7, 2013, and was subsequently granted *in forma pauperis* ("IFP") status and allowed to proceed without prepaying the entire filing fee. Order Granting IFP Application (Dkt No. 3). Williams waived service of summons on August 5, 2013. (Dkt. No. 9). On November 4, 2013, Williams moved for dismissal of Groenow's complaint on the grounds that Groenow failed to exhaust his administrative remedies and failed to state a claim upon which relief can be granted. *See* Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def. Mem.") (Dkt. No. 14). To date, Groenow has not filed any opposition papers, although he advised the Court that he is no longer housed at OBCC, having been transferred to Downstate Correctional Facility on January 2, 2014. *Pro Se* Memorandum (Dkt. No. 16); *see also* "Inmate Population Information Search, New York State Department of Corrections and Community Supervision," available at http://nysdoccslookup.doccs.ny.gov/, Query "Groenow, Jonathan" and "DIN# 14A0010" (last visited March 7, 2014).

2

## II.   DISCUSSION

### A.  Rule 12(b)(6) Motion to Dismiss and *Pro Se* Complaints

Groenow's failure to oppose Defendant's Rule 12(b)(6) motion does not by itself merit

dismissal of his complaint. *See Goldberg v. Danaher*, 599 F.3d 181, 183-84 (2d Cir. 2010);

*McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000).  When presented with an unopposed

motion, the Court remains obligated to review the pleadings and determine whether there is a

sufficient basis for granting the motion. *Goldberg*, 599 F.3d at 183.  Accordingly, in deciding

an unopposed motion to dismiss, a court is to "assume the truth of a pleading's factual

allegations and test only its legal sufficiency" according to applicable principles. *McCall*, 232

F.3d at 322.

On a Rule 12(b)(6) motion to dismiss, the court must accept all allegations in the

complaint as true and draw all reasonable inferences in favor of the nonmoving party. *McCarthy*

*v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  A complaint "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

. . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.*

While *pro se* complaints must also contain sufficient factual allegations to meet the

plausibility standard, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013), district courts should

proactively look for such content by reading *pro se* complaints with "special solicitude" and

interpret them to raise the "strongest [claims] that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam) (emphasis in original).

## B. Dismissal is Not Warranted on Exhaustion Grounds

As a threshold matter, the PLRA prohibits a prisoner from bringing § 1983 claims "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[C]ourts should be careful to look at the applicable set of grievance procedures" within a prisoner's correctional facility at the time the grievance arose to determine whether administrative remedies were available. *Taylor v. New York State Dep't of Corr.*, No. 03 Civ. 1929 (PKC), 2004 WL 2979910, at *6 (S.D.N.Y. Dec. 22, 2004) (citing *Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004)). The applicable administrative procedure in this case is the Inmate Grievance and Request Program ("IGRP"), a four-step administrative review and appeals system for prisoner grievances within the New York City Department of Correction.[1] The PLRA "requires 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Hernandez v. Coffey*, 582 F.3d 303,

---

[1] The IGRP requires prisoners to: (1) file a complaint with the IGRP for informal resolution within ten days of the alleged violation; (2) if unsatisfied with the disposition or a disposition has not been reached in a timely manner, request a hearing with the Inmate Grievance Resolution Committee ("IGRC") within five days of the disposition; (3) appeal to the commanding officer of the facility, who must render a decision within five working days; and (4) if the inmate is still unsatisfied with the disposition, appeal to the DOC Central Office Review Committee ("CORC"), which must issue a recommendation within 15 working days. *See* N.Y.C. Dep't of Corr., Directive: Inmate Grievance and Request Program, No. 3376 (effective date Sept. 12, 2012), available at http://www.nyc.gov/html/doc/downloads/pdf/Directive_3376_Inmate_Grievance_Request_Progr am.pdf (last visited March 7, 2014). The current version of the IGRP came into effect in September 2012, *id.*, and because Groenow does not specify the date that he filed his grievance, it is not clear whether this version of the grievance procedure was in effect at the time. Nevertheless, this distinction does not affect the Court's analysis as previous versions of the IGRC were substantially similar to the current one. *See Johnson v. Agros*, No. 10 Civ. 8312 (PAE), 2012 WL 3564028, at *4 (S.D.N.Y. Aug. 20, 2012) (describing IGRP in effect prior to September 12, 2012).

305 (2d Cir. 2009) (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotation marks omitted) (emphasis in original)).

The Supreme Court has made clear, however, that prisoners "are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, failure to exhaust administrative remedies is an affirmative defense that must be raised and proven by defendants. *Id.* The Supreme Court has cautioned that courts should not impose a heightened pleading requirement that does not exist in the PLRA, particularly because "when Congress meant to depart from the usual procedural requirements [of the Federal Rules of Civil Procedure], it did so expressly [in the PLRA]." *Id.* at 216.

Although a motion for summary judgment is normally the proper vehicle to address a plaintiff's failure to exhaust, "'[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.'" *McCoy v. Goord*, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74-75 (2d Cir. 1998)). Because prisoners are not required to plead compliance with prison grievance procedures in their complaints, however, district courts in this Circuit have denied motions to dismiss based on exhaustion where ambiguity exists as to whether a plaintiff exhausted his administrative remedies. Where a prisoner indicates that he has taken *some* steps toward exhaustion, district courts will not normally infer from his silence as to any remaining steps that he has not fully exhausted. *See, e.g., James v. Orange Cnty. Corr. Fac.*, No. 09 Civ. 9226 (CM), 2011 WL 5834855, at *3 (S.D.N.Y. Nov. 18, 2011) (declining to dismiss for failure to exhaust where plaintiff supplied "partial history of his exhaustion of the grievance process"); *Randolph v. N.Y.C. Dep't of Corr.*, No. 05 Civ. 8820 (GEL) (MHD), 2007 WL 2660282, at *8 (S.D.N.Y.

5

Sept. 7, 2007) ("[Plaintiff's] failure to mention some of the required steps cannot be deemed to establish a failure to exhaust; rather, it simply leaves ambiguity as to the extent of his exhaustion efforts."), Report and Recommendation, *adopted by* Order dated Sept. 22, 2007 (Dkt. No. 45). Accordingly, "a *pro se* plaintiff's pleading references to various efforts that he has made to bring alleged prison violations to the attention of the prison authorities cannot be treated as tantamount to an admission that he had not exhausted his remedies." *Wesley v. Muhammad*, No. 05 Civ. 5833 (GEL) (MHD), 2008 WL 123812, at *3 (S.D.N.Y. Jan. 10, 2008), Report and Recommendation, *adopted by* 2008 WL 236974 (S.D.N.Y. Jan. 28, 2008). *But see Ghee v. Warden Ramos*, No. 13 Civ. 632 (RWS), 2013 WL 7018543, at *1-2 (S.D.N.Y. Dec. 4, 2013) (dismissing prisoner's complaint for failure to exhaust where he left blank the question regarding his appeal efforts and failed to allege "further actions taken . . . to appeal his initial grievance or comply with the remaining requirements under the IGRP"); *Antrobus v. Warden of GRVC*, No. 11 Civ. 5128 (JMF), 2012 WL 1900542, at *3 (S.D.N.Y. May 25, 2012) (treating prisoner's nonresponsive answer regarding his appeal efforts on form complaint as "a concession that he did not attempt to appeal the decision at all.").

Here, it is not clear from the face of the complaint that Groenow has failed to properly exhaust his administrative remedies under the PLRA. Groenow indicates that he filed a grievance within the prison and that he received "no result." Compl. at 4. He does not, however, provide a response to the prompt: "What steps, if any, did you take to appeal that decision? Describe all efforts to appeal to the highest level of the grievance process." Compl. at 6. It is therefore only clear from Groenow's allegations that he initiated the IGRP grievance process and that, at the time of filing his complaint, he had not received a response. Williams points out that where an inmate does not receive a timely response to his grievance, the IGRP states that he

6

"may submit a request for an appeal (to proceed to the next step of the IGRP process) through the use of the IGRP disposition form." *See* Def. Mem. at 7; IGRP § IV(D)(10)(a) (*supra* at n.2). Nonetheless, Groenow has not conceded that he did not take that step. *See Randolph*, 2007 WL 2660282, at *7 (declining to dismiss complaint where prisoner alleged that he filed grievance and received no response, because "at no point does [prisoner] state that he *failed* to follow all the required grievance procedures"). Although "[t]he complaint may lack specifics as to how the plaintiff grieved his claim, that is not a valid basis for dismissal under *Jones*." *Johnson v. Westchester Cnty. Dep't of Corr. Med. Dep't*, No. 10 Civ. 6309 (JGK), 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011) (declining to dismiss prisoner's complaint where he alleged only that he had "filed a complaint within the office of the warden").

Williams contends that dismissal is appropriate where "inmates use form complaints which contain prompts asking them to describe all steps they have taken to appeal the result of an initial grievance, and their responses to that prompt do not indicate that they completed all steps of the DOC's grievance process." Def. Mem. at 8. Accepting this argument – that Groenow's claims should be dismissed if he does not plead completion of the grievance process on the form complaint – would impose the very pleading burden on plaintiffs that the Supreme Court rejected in *Jones*. *See, e.g., Torns v. Mississippi Dep't of Corr.* 301 F. App'x. 386, 389 (5th Cir. 2008) (district court erred in dismissing case for failure to exhaust where it relied on information elicited through questions regarding exhaustion of administrative remedies on form complaint) (citing *Carbe v. Lappin*, 492 F.3d 325, 327 (5th Cir. 2007) (district court cannot sidestep *Jones* by requiring plaintiff to affirmatively plead exhaustion)).

Although Williams supports his argument by relying on various cases that were dismissed on a Rule 12(b)(6) motion for failure to exhaust, Def. Mem. at 8-9, dismissal was

7

appropriate in those cases because failure to exhaust was clear on the face of the complaint. In

*Banks v Mental Health Clinicians*, for example, the prisoner explicitly conceded that he did

nothing to appeal the grievance decision. No. 11 Civ. 7848 (LAP), 2012 WL 6201259, at *3-4

(S.D.N.Y. Dec. 11, 2012). *See also Rivera v. Anna M. Kross Center*, No. 10 Civ. 8696 (RJH),

2012 WL 383941, at *6 (S.D.N.Y. Feb. 7, 2012) (dismissing claim where plaintiff stated he did

nothing to appeal grievance committee's inaction on initial grievance). Similarly, district courts

have dismissed claims on the basis of exhaustion where a plaintiff alleges that he took steps to

grieve that are inadequate as a matter of law. For example, one court dismissed a complaint

where plaintiff alleged that he had filed a grievance and that he followed up on it by talking to

the captain and warden, rather than requesting a hearing as required by administrative procedure.

*Shamel v. Agro*, No. 11 Civ. 9473 (GBD) (HBP), 2013 WL 686681, at *6 (S.D.N.Y. Jan. 28,

2013) ("[T]hese informal efforts did not comply with the procedures set forth in the IGRP and

were, therefore, insufficient to exhaust his claims.") (citing *Macias v. Zenk*, 495 F.3d 37, 44 (2d

Cir. 2007) (noting that PLRA exhaustion requires strict compliance with prison's procedural

rules and that informal complaints to prison staff were insufficient to comply)), Report and

Recommendation, *adopted by* 2013 WL 704162 (S.D.N.Y. Feb. 26, 2013). By contrast,

Groenow does not explicitly concede that he did not appeal his grievance nor does he allege that

he took steps to grieve that do not comply with the strict requirements of the IGRP. His silence

on his appeal efforts therefore "cannot be treated as tantamount to an admission that he had not

exhausted his remedies." *Wesley*, 2008 WL 123812, at *3.

Moreover, Groenow's allegations do not rule out the possibility that an exception to the

exhaustion requirement may apply. The Second Circuit has held that exhaustion of

administrative remedies may be excused if: (1) administrative remedies are not available to the

prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or, (3) special circumstances justify the prisoner's failure to comply with the exhaustion requirement. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004).[2]  For example, one court declined to dismiss a prisoner's complaint on exhaustion grounds because the allegations that he submitted a grievance to the prison and received no response "do[es] not . . . rule out the possibility that any exception to the exhaustion requirement apply." *Wesley*, 2008 WL 123812, at *3.  Another court refused to dismiss on exhaustion grounds where there was evidence of a "reasonable attempt" to exhaust and allegations that "corrections officers never filed some . . . grievances." *Rodriguez v. Hahn*, No. 99 Civ. 11663 (VM), 2000 WL 1738424, at *2 (S.D.N.Y. Nov. 22, 2000).  Indeed, the Second Court has stated that "[e]xhaustion may be [excus]ed in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies." *Abney*, 380 F.3d at 667.

For these reasons, it is not clear from Groenow's allegations that he failed to exhaust his administrative remedies or that any failure cannot be excused by an exception to the exhaustion requirement.  Williams' affirmative defense of failure to exhaust administrative remedies therefore cannot be resolved on the present record.

## C. Groenow's Complaint Fails to State a Claim

Groenow alleges that Defendant "forc[ed him] to call [his] attorney on a recording and monitoring system." Compl. at 3.  The Court broadly construes these allegations as raising claims under the Sixth Amendment right to counsel and the right of access to the courts

---

[2]    The Second Circuit has reserved the question of whether the *Hemphill* test applies in light of the Supreme Court's interpretation of the PLRA's exhaustion requirement in *Woodford v. Ngo*, 548 U.S. 81 (2006). *See Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011).

underpinned by several constitutional provisions.[3] Williams contends that Groenow fails to state a claim on these bases, and also that Groenow should be precluded from receiving monetary damages under the PLRA because he does not allege that he suffered a "physical injury."[4] Def. Mem. at 13-14.

Groenow's complaint suffers from a lack of specificity with respect to the nature of the ongoing legal matters that he was discussing with his attorney. If Groenow was communicating with his attorney to prepare a defense to his criminal prosecution or appeal a conviction, his Sixth Amendment right to counsel would be implicated. *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001) (noting that Sixth Amendment right to counsel is triggered when prisoners are "defend[ing] against the charges brought against them"). If, however, Groenow was communicating with an attorney regarding another matter, such as a challenge to the conditions of his confinement, his right of access to the courts is implicated. *Id.* While these two rights are

---

[3]      On its face, Groenow's complaint could additionally be read as raising claims under the Omnibus Crime Control and Safe Streets Act ("Wiretap Act"), 18 U.S.C. §§ 2510-2522, but fails to state a plausible claim for relief on this basis. Surveillance of prisoners' phone calls is not considered a violation of the Wiretap Act because either the prisoners have given implied consent to monitoring by using phones that they have been warned are monitored, *United States v. Willoughby*, 860 F.2d 15, 19-20 (2d Cir. 1988), or (on an alternate theory endorsed by other Circuits but to date not by the Second Circuit) because such monitoring falls within the exception for interception of communications "by an investigative or law enforcement officer . . . in the normal course of his duties." *United States v. Friedman*, No. 95 CR 192 (S-3) (ARR), 1996 WL 612456, at *20 (E.D.N.Y. June 25, 1996), *aff'd in part, rev'd in part*, 300 F.3d 111 (2d Cir. 2002).

[4]      The PRLA provides that "[n]o Federal civil action may be brought by a prisoner confined in a . . . prison . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C § 1997e(e). This language, however, does not bar recovery entirely where physical injury is not alleged. It merely limits a plaintiff's recovery to nominal and punitive damages. *See Edwards v. Horn*, No. 10 Civ. 6194 (RJS) (JLC), 2012 WL 760172, at *22 (S.D.N.Y. Mar. 8, 2012) ("To recover punitive or nominal damages . . . a prisoner need not allege that he has sustained a physical injury") (citing *Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002)). The Court does not address here the potential for recovery under the PLRA because it recommends dismissal on other grounds.

10

often interrelated, "since the provision of counsel can be a means of accessing the courts," they are nonetheless distinct claims governed by distinct standards. *Id.* (discussing the difference between right to counsel and right of access to courts). Regardless of which right is implicated, however, Groenow's complaint does not state a claim on which relief may be granted.

### 1. Claim of Lack of Access to Counsel

To the extent that Groenow raises a claim of lack of access to counsel under the Sixth Amendment, it should be dismissed. The Supreme Court has held that "inmates must have a reasonable opportunity to seek and receive the assistance of attorneys," and that "[r]egulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *partially overruled on other grounds by Thornburgh v. Abbott,* 490 U.S. 401 (1989). The Second Circuit has held that "prison regulations restricting pretrial detainees' contact with their attorneys [are] unconstitutional where they 'unreasonably burdened the inmate's opportunity to consult with his attorney and to prepare his defense.'" *Benjamin*, 264 F.3d at 187 (quoting *Wolfish v. Levi,* 573 F.2d 118, 133 (2d Cir. 1978)). A prisoner asserting a violation of the Sixth Amendment need not allege that he suffered "actual injury" as a result of this interference. *Id.* at 185 ("[W]here the right at issue is provided directly by the Constitution or federal law, a prisoner has standing to assert that right even if the denial of that right has not produced an 'actual injury.'"). As recognized by the Supreme Court, "to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." *Maine v. Moulton*, 474 U.S. 159, 170 (1985).

11

Here, Groenow alleges that Williams forced him to call his attorney on a monitored telephone line, thus destroying the confidentiality of their conversations.[5] This allegation alone is insufficient to demonstrate that Williams unreasonably burdened his opportunity to consult with his attorney, because district courts have found that a prisoner's right to counsel is not unreasonably burdened where a plaintiff has alternate means of communication with counsel. *See, e.g., Fisher v. Dep't of Corr.*, No. 92 Civ. 6037 (LAP), 1995 WL 608379, at *7 (S.D.N.Y. Oct. 16, 1995) (dismissing, on summary judgment, prisoner's § 1983 claim regarding telephone access to counsel where prisoner had access by other means); *see also Henry v. Davis*, No. 10 Civ. 7575 (PAC) (JLC), 2011 WL 3295986, at *2 (S.D.N.Y. Aug. 1, 2011) ("Phone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world, and particularly with counsel."), Report and Recommendation, *adopted by* 2011 WL 5006831 (S.D.N.Y. Oct. 20, 2011). Accordingly, a plaintiff must also "allege that he was stripped of alternate methods of communication in order to state a violation of his constitutional rights." *Edwards v. Horn*, No. 10 Civ. 6194 (RJS) (JLC), 2012 WL 760172, at *5 (S.D.N.Y. Aug. 1, 2011). In a case similar to this one, the court held that defendants did not "unreasonably burden" a prisoner's Sixth Amendment right to counsel when they denied him three unmonitored calls to his attorney, because he was permitted more than a dozen unmonitored calls during that time and had other means of access to his attorneys, such as mail and in-person visits. *Schick v. Apker*. No. 07 Civ. 5775 (SHS), 2009 WL 2016926, at *3 (S.D.N.Y. July 10, 2009); *see also United States v. Lentz*, 419 F. Supp. 2d 820, 835-36

---

[5]    Williams identifies Department of Correction procedures that allow attorneys to speak with prisoners on unmonitored telephone lines. Def. Mem. at 12 (citing N.Y.C. Dep't of Corr., "How Do I Prevent Monitoring and Recording of Calls from Inmates," available at http://www.nyc.gov/html/doc/html/how/prevent_recording.shtml). The existence of these procedures is irrelevant, however, if, as Groenow alleges, Williams forced Groenow to use the monitored lines instead.

(E.D. Va. 2005) (policy of recording all outgoing inmate calls, including those made to counsel, did not violate Sixth Amendment right to counsel because defendant had other avenues of confidential communication with counsel, such as writing or in-person conferences at jail).

Because Groenow has not alleged that he was denied all opportunities to consult confidentially with his attorney, he has not plausibly alleged a Sixth Amendment violation. Rather, Groenow has simply alleged that he was denied *one* method of communicating confidentially with his attorney. Although monitoring telephone calls with his attorney most likely had a chilling effect on Groenow's ability to communicate effectively with his attorney, *see Davidson v. Dean*, No. 97 Civ. 2020 (VM) (HBP), 2000 WL 257148, at *2 (S.D.N.Y. Mar. 7, 2000), prisoners are not entitled to their preferred method of communicating with counsel. *Bellamy v. McMickens*, 692 F. Supp. 205, 214 (S.D.N.Y. 1988) ("[S]tates have no obligation to provide the best manner of access to counsel. Rather, restrictions on inmates' access to counsel via the telephone may be permitted as long as prisoners have some manner of access to counsel."). A prisoner's means of consulting with his attorney must only be reasonable. Accordingly, Groenow's allegations, accepted as true for the purposes of this motion, are insufficient to state a plausible claim that he was deprived of his Sixth Amendment right to counsel.

## 2. Claim of Lack of Access to Courts

To the extent that Groenow was communicating with his attorney on monitored lines regarding a matter other than his criminal prosecution or appeal, his claims arise under the right of access to the courts. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Benjamin*, 264 F.3d at 186. The Supreme Court has "grounded" this right in a number of constitutional provisions, including the Article IV Privileges and Immunities Clause, the First Amendment

13

Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses. *See Christopher*, 536 U.S. at 415 n.12 (collecting cases). As with right-to-counsel claims, a claim alleging that prison officials violated a prisoner's right of access to the courts requires that a prisoner be prohibited from communicating with his attorney by all available means. *See Davidson*, 2000 WL 257148, at *2 (dismissing inmates' access claim because inmates do not have "right to unlimited, unrestricted telephone use [with attorney]," particularly when they have "alternatives of personal and written communication"). As already discussed, Groenow's allegations do not satisfy this requirement.

Additionally, a plaintiff must show that deprivation of his right to access the courts unfairly prejudiced his case. *Lewis v. Casey*, 518 U.S. 343, 353 (1996) (inmate must establish "actual injury" to satisfy standing requirement for claim that right of access to court was violated). To demonstrate this requisite "actual injury," a plaintiff must allege (1) a valid underlying cause of action separate from the right of access claim; and (2) frustration or hindrance of the litigation caused by the public official. *Christopher*, 536 U.S. at 415 (citing *Lewis,* 518 U.S. at 353 n.3). Groenow neglects to allege that he suffered any injury as a result of being forced to call his attorney on a monitored telephone line, having left blank the section on the form complaint labeled "Injuries" and otherwise omitting any allegation that he suffered because of Williams' actions. *See* Compl. at 3. Groenow therefore fails to assert a valid underlying cause of action separate from his conclusory claim that his right of access was hindered. *See Christopher*, 536 U.S. at 415. Accordingly, Groenow's allegations, accepted as true for this motion, are insufficient to state a plausible claim that Williams deprived him of his right of access to the courts.

14

### III.   CONCLUSION

For the foregoing reasons, I recommend that the Court grant Williams' motion to dismiss Groenow's complaint for failure to state a claim on which relief may be granted.

### PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Crotty.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010). If Groenow does not have access to cases cited herein that are reported on Westlaw, he should request copies from Defendant. *Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009).

Dated:   New York, New York
       March 11, 2014

JAMES L. COTT
United States Magistrate Judge

15

**A copy of this Report and Recommendation has been mailed to:**

Jonathan Groenow
Downstate Correctional Facility
121 Red Schoolhouse Road
P.O. Box F
Fishkill, NY 12524
DIN#14A0010